## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **SPEED FAB-CRETE CORPORATION** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. _____** |
| | § | |
| **LEXINGTON INSURANCE COMPANY** | § | |
| | § | |
| *Defendant* | § | |

---

## COMPLAINT

---

**SPEED FAB-CRETE CORPORATION** files this Complaint for damages against **LEXINGTON INSURANCE COMPANY** for breach of an insurance contract, bad faith and violations of Texas Deceptive Trade Practices Act and the Texas Insurance Code and in support hereof would show the Court and Jury:

### I.

### PARTIES

1.     Speed Fab-Crete Corporation ("Plaintiff") is a Texas Corporation with its principal place of business in Tarrant County, Texas.

2.     Defendant Lexington Insurance Company ("Defendant") is a Delaware corporation with its principal place of business in Massachusetts, engaging in the business of insurance in the State of Texas. Defendant Lexington may be served with process in accordance with the Policy's service of suit clause at Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, MA 02110.

**II.**

**JURISDICTION AND VENUE**

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000.00 and is between citizens of different States. Plaintiff Speed Fab-Crete Corporation is a Texas corporation with its principal place of business in Tarrant County, Texas. Thus, Plaintiff is a citizen of the State of Texas. Defendant Lexington Insurance Company is an insurance company incorporated under the laws of Delaware with its principal place of business in Massachusetts.

4.      Jurisdiction and venue are proper in this District Court because the Property made the basis of the suit is located in Tarrant County, Texas and the facts giving rise to Plaintiff's causes of action occurred in Tarrant County, Texas.

**III.**

**FACTUAL BACKGROUND**

5.      Plaintiff owns a manufacturing facility, an office and a warehouse at 1150 East Kennedale Parkway, Kennedale, Texas (the "Property"). The Property was insured by Defendant under Policy number 026710723 during all periods relevant hereto. After receiving notice of the claim, Defendant hired DBI to inspect and adjust the loss. DBI found the presence of hail damage to the roof and agreed that a date of loss was June 13, 2023. However, there was disagreement over the proper method to address the damage. Defendant advocated roof repairs as opposed to roof replacement. As Defendant is well aware, this would be an inadequate method of repair given the widespread moisture intrusion and the extensive interior leaks.

6.      After receiving the DBI report, Defendant also hired MKA International, to inspect the damage. The investigation by MKA contained numerous misstatements and misrepresentations

which Defendant either knew or should have known to be false. MKA initially cited an incorrect date of loss. However, MKA later acknowledged that a June 13, 2023 hail storm was the likely cause of the observed damage. MKA then noted its findings with regard to the office roof. MKA chose test squares to ascertain the presence of hail impacts. This is an imprecise manner to measure the presence of damaging hail based on the fact that it is wholly subjective, and the location chosen by the inspector of the test square is largely outcome-determinative. Despite this, MKA noted "potential hail impact spatter measuring 0.25-0.50-inch diameter." MKA also noted that "analysis of the TPO roof curb revealed that there are spatter marks on the membrane consistent with hail impacts" and that the spatter was "measured at roughly 0.75-1.25 inches in diameter." MKA also noted the presence of interior leaks.

7.      MKA then inspected the warehouse roof and made similar findings, namely the widespread presence of hail spatter. MKA's speculative hail spatter measurements ignored the presence of even larger hail which occurred at the Location during the policy period. Despite this, Defendant used the misstatements in the MKA report as the basis for its denial of the claim.

8.      Defendant quoted inapplicable policy provisions to attempt to augment the unreasonable basis for its denial. Defendant also failed to require MKA to segregate between covered and non-covered perils. Instead, Defendant used the MKA report as a wholesale denial of the insured's claim without applying the precise terms of the Policy.

9.      After the claim was reported on July 3, 2023, Defendant missed several deadlines as proscribed by Texas Insurance Code §542.  For example, as a surplus lines carrier Defendant had 30 business days to 1) acknowledge receipt of the claim; 2) begin an investigation of the claim; and 3) request all documentation from the insured necessary to formulate a final proof of loss. Defendant failed to request any information from the insured nor did Defendant request additional

time to investigate the loss. In addition, Defendant failed to request a signed, sworn proof of loss and failed to send a necessary proof of loss form to the insured as required by the Policy. Therefore, not only did Defendant miss the deadlines to promptly adjust the claim as set forth in the Texas Insurance Code, Defendant also predetermined the damage, or determined without any reasonable basis, that the damage was not the result of hail and wind and was, instead, the result of wear and tear.

10.     Defendant missed several deadlines as proscribed by Texas Insurance Code §542. Defendant had 30 business days to 1) acknowledge receipt of the claim; 2) begin an investigation of the claim; and 3) request all documentation from the insured necessary to formulate a final proof of loss. Defendant failed to request any information from the insured nor did Defendant request additional time to investigate the loss. In addition, Defendant failed to request a signed, sworn proof of loss and failed to send a necessary proof of loss form to the insured as required by the Policy. Defendant also had 60 days to pay the claim after receiving all of the information necessary to decide the claim.

11.     Defendant's substandard inspection, unilateral determination, and failure to accurately inspect and adjust the claim, as well as the misrepresentations above, constitute textbook bad faith. Defendant was repeatedly provided with information sufficient to provide coverage and pay the claim.

12.     Defendant engaged in acts that were solely designed to deny Plaintiff's legitimate claim. In denying Plaintiff's legitimate, covered claim, Defendant failed to abide by the Prompt Payment of Claims time limits set forth in Texas Insurance Code.

13.     Plaintiff provided Defendant with information sufficient to adjust and pay for the loss. In spite of the information presented by Plaintiff and the information obtained from any reasonable investigation, Defendant continued to deny the claim without any reasonable basis.

## IV.

### FIRST CAUSE OF ACTION-BREACH OF CONTRACT

14.     Plaintiff contracted with Defendant for property and casualty insurance on the Property made the basis of this lawsuit.  As part of the contract for insurance, Plaintiff paid the Defendant premiums as required under the terms of the Policy.  Defendant agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting in a Covered Cause of Loss."  The damage to the Plaintiff's Property was the type covered by the contract for insurance.

15.     Defendant breached the contract for insurance in one or more of the following ways:

(a)     Failing to pay full benefits due in a timely manner in accordance with the terms of the Policy;

(b)     Failing to provide a reasonable explanation of the basis for denying the claim; and

(c)     Failing to promptly and equitably pay the claim once liability had become reasonably clear.

16.     This breach of contract by the Defendant is the proximate cause of the damages suffered and to be suffered in the future by Plaintiff, for which Plaintiff now sues.

## V.

### SECOND CAUSE OF ACTION-BREACH OF GOOD FAITH AND FAIR DEALING

17.     From and after the time the Plaintiff's claim was presented to Defendant, Defendant's liability to pay the claim in accordance with the terms of the Policy was reasonably clear.  Despite

there being no basis on which a reasonable insurance company would have relied to deny payment of Plaintiff's claim, Defendant refused to promptly investigate the claim and pay Plaintiff.

18.     Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. In this regard, Plaintiff will show that Defendant failed to conduct a prompt, reasonable, thorough and proper investigation of the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid fully paying to repair the damage caused by the covered event which led to the Claim.

19.     Consequently, Defendant breached their duty to deal fairly and in good faith with the Plaintiff. Defendant's breach was a proximate cause of the losses, expenses, and damages suffered by the Plaintiff as more specifically described below. These losses include a separate and distinct measure of damages which would not have been incurred but for the Bad Faith committed by Defendant.

20.     Plaintiffs seek exemplary damages in an amount to be assessed by the trier of fact caused by Defendant's bad faith.

## VI.

### THIRD CAUSE OF ACTION
### PROMPT PAYMENT OF CLAIMS

21.     Plaintiff would show that Defendant violated Texas Insurance Code §542 Subchapter B, Section 542.051 et seq. Defendant:

> a. failed to timely commence an investigation of the claim;
>
> b. failed to reasonably or timely request information from the Plaintiff;
>
> c. failed to accept or reject the claim timely as required by Texas Insurance Code §542.056;
>
> d. delayed payment of the claim in violation of Texas Insurance Code §542.058.

22.     Defendant is liable to Plaintiff for damages and penalties for its violation of the Texas Prompt Payment of Claims Act as set forth in Texas Insurance Code Section 542.060.

## VII.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE TEXAS INSURANCE CODE

23.     Defendant engaged in unfair claim settlement practices prohibited by Section 541.060 of the Texas Insurance Code.  Specifically, Defendant:

(a)     misrepresented to Plaintiff a material fact or policy provision relating to coverage at issue;

(b)     failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim even though Defendant's liability had become reasonably clear; and/or

(c)     failed to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the Defendant's denial of a claim or offer of a compromise settlement of a claim.

(d)     refused to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim;

(e)     failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to another claim under another portion of coverage.

24.     Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages more fully described herein below.

25.     Plaintiff would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code and Chapter 541 of the Texas Insurance Code were relied upon by Plaintiff to Plaintiff's detriment.

## VIII.

### CONDITIONS PRECEDENT

26.    By letter dated August 8. 2024, Plaintiff gave Notice as required under the Texas Deceptive Trade Practices Act (Texas Business & Commerce Code Section 17.45 et seq) and the Texas Insurance Code Sections 541 and 542 et seq. All other conditions precedent to filing suit have been met, including Plaintiff's payment of the insurance premium to Defendant.

## IX.

## WAIVER AND ESTOPPEL

27.    Defendant has waived or is estopped from asserting any coverage defenses, conditions, exclusions or exceptions to coverage not contained in any reservation of rights letter to Plaintiff.

## X.

## AGENCY

28.    At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant including DBI and MKA, occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

29.    Said Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## XI.

## JURY DEMAND

30.    Pursuant to Rule 38, F.R.C.P., Plaintiff demands a jury trial on any issue triable of right by jury.

## XII.

## PRAYER

31.    For these reasons, Plaintiff asks that Defendant be cited to appear and answer, and

that upon final trial, Plaintiff have judgment against Defendant for:

(a)    Actual damages;

(b)    Reasonable and necessary attorney's fees;

(c)    Extra-contractual damages for Defendant's violations of the Texas Insurance Code
and the Texas Insurance Code including exemplary and punitive damages for
knowing violations:

(d)    Pre-judgment and post-judgment interest as allowed by law;

(e)    Costs of court;

(f)    All other relief, at law or in equity, to which Plaintiff may be entitled.


Respectfully submitted,


/s/Timothy M. Hoch
Timothy M. Hoch
Texas Bar No. 09744950
tim@hochlawfirm.com

HOCH LAW FIRM, P.C.
5616 Malvey Avenue
Fort Worth, Texas 76107
(817)731-9703
(817)731-9706 – facsimile